IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NAD LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:16cv0158 (AJT/IDD) |
| ) | |
| AUBREY EUGENE ROSE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

# MEMORANDUM OF DECISION:
## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF VERDICT

In June, 2010, the Defendants, Aubrey Eugene Rose and Darlene Rose (collectively, the "Roses"), sold their home located in Fairfax County to the Plaintiff's predecessor in interest, subject to their retaining a life estate in that property. Since that transaction, Plaintiff NAD, LLC ("NAD"), or its predecessor in interest, have paid the real estate taxes on the property. In this action, filed on February 18, 2016,[1] the Plaintiff, as remainderman to Defendants' life tenancy, claims that the Roses were obliged to pay real estate taxes on the property during their life tenancy and seeks reimbursement for the taxes that it and its predecessor have paid. On October 20, 2016, the Court held a bench trial and took the matter under advisement.[2] Because the Court finds and concludes that Plaintiff and Defendants had agreed that Plaintiff would be responsible for those tax payments and that their agreement that did not merge into the Deed, which does not specifically indicate which party is responsible for real estate tax payments, the Court renders its verdict and judgment in Defendants' favor, and this action will be dismissed. Pursuant to

---

[1] Plaintiff initially filed suit in Fairfax County Circuit Court seeking reimbursement for real estate taxes it had paid between 2010 and 2015, but voluntarily dismissed that suit without prejudice on February 10, 2016. *NAD LLC v. Rose, et ux.*, Case No. CL-2015-06299 (Fairfax County). By stipulation, the written discovery responses and depositions taken in that state court matter apply to this case.
[2] On June 23, 2016, Plaintiff filed a motion for summary judgment [Doc. No. 8.], which the Court heard and denied on July 8, 2016 [Doc. No. 12].

Federal Rule of Civil Procedure 52, the Court makes the following findings of fact and conclusion of law in support of its verdict:[3]

## I.     FINDINGS OF FACT

Based on all of the evidence and the Court's assessment of the credibility of the witnesses and the weight to be given any particular piece of evidence, together with reasonable inferences drawn from that evidence, the Court makes the following findings of fact:

1. Plaintiff NAD, LLC is a Maryland Limited Liability Company and the record owner of real estate located at 690 Miller Avenue, Great Falls, Virginia 22066 (the "Property").

2. NSMNF, LLC ("NSMNF") was a Massachusetts Limited Liability Company. Plaintiff and NSMNF, LLC, have at all times been owned and operated by the same person.

3. Defendants were husband and wife. Darlene Rose presently resides at the Property. Defendant Aubrey Eugene Rose died on April 17, 2016, after this case was filed.

4. On June 12, 2010, Defendants sold the Property to NSMNF. The sales contract executed on June 12, 2010 (the "Contract"), which also contained various addenda, contemplated that the Defendants would sell the Property in fee with a <u>leaseback</u> to Defendants (rather than a life estate).

5. At the time of the conveyance, Defendants were represented by counsel and also by a licensed real estate broker, Jeff Rose, who is the Defendants' son and who was called as a witness in this trial. Hugh Geiger ("Geiger") acted as an authorized agent of the initial purchaser, NSMNF, during the sale of the Property from Defendants to NSMNF, though he did not attend the settlement.

---

[3] "In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a).

2

6. Prior to the execution of the Contract for the Property, Jeffrey Rose, as Defendants' agent, and Hugh Geiger, as NSMNF's authorized agent, verbally agreed that NSMNF would pay the real estate taxes on the Property after the purchase.

7. Consistent with the parties' agreement, the Contract provided for "prorat[ing]" the taxes on the transaction and agreeing that the purchaser's obligations shall survive Settlement, as set forth in the following provision:

> 8) <u>Adjustments for Settlement.</u> Except as otherwise expressly provided in the deed of conveyance between the Seller and the Buyer (the "Deed"), all real estate taxes, rents, if and when collected, service contracts, all utilities, and any other miscellaneous expenses related to the property will be prorated as of the settlement date. All operating receipts and expenses, utilities, expenses, taxes, water and sewer rents, or similar charges or fees, if any, are to be adjusted as of the Settlement Date. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the taxing authority in the jurisdiction in which the Property is situate, except that assessments for improvements completed prior to the Effective Date, whether assessment therefore has been levied or not, shall be adjusted between the parties as of the Settlement Date. Regarding the foregoing – and, again, as otherwise expressly provided in the Lease – the Purchaser shall be responsible for payment of, and entitled to receive the benefit of (where applicable) all post-Settlement charges incurred or amounts to be received in the future, and Purchaser agrees to register its identity with all taxing authorities, vendors, suppliers, etc. as necessary to facilitate the intent of this paragraph. Purchaser's obligations under this paragraph 8 shall survive Settlement and not merge with the deed.

8. Defendants and NSMF subsequently signed an addendum on June 30, 2010 (the "Life Estate Addendum"), which modified the terms of the Contract. The Life Estate Addendum eliminated Defendants' leasehold interest and instead reserved for Defendants a life estate on the Property, coupled with a twelve-month right of access for Defendants' successors. The Life Estate Addendum preserved the parties' agreement concerning the proration of real estate taxes, although it eliminated the statement that "Purchaser's

[Plaintiff's] obligations under this paragraph 8 shall survive Settlement and not merge with the deed." The relevant portion of the Life Estate Addendum reads:

> 4. <u>Lease-related Provisions Eliminated.</u> The parties no longer intend or desire to have the Lease be a part of the Contract, and accordingly wish to modify the Contract to eliminate any reference to the Lease; to this end, the parties make the following changes to the Contract Language:
> …
> b) Paragraph 8 of the Seller's Addendum (captioned "Adjustments for Settlement") shall be stricken in its entirety, and <u>the following language shall be substituted</u>:
>> <u>Adjustments for Settlement.</u> Except as otherwise expressly provided in the deed of conveyance between the Seller and the Buyer (the "Deed"), all real estate taxes, rents, if and when collected, service contracts, all utilities, and any other miscellaneous expenses related to the property will be prorated as of the settlement date. All operating receipts and expenses, utilities, expenses, taxes, water and sewer rents, or similar charges or fees, if any, are to be adjusted as of the Settlement Date. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the taxing authority in the jurisdiction in which the Property is situate, except that assessments for improvements completed prior to the Effective Date, whether assessment therefore has been levied or not, shall be adjusted between the parties as of the Settlement Date.

9. The Life Estate Addendum also explicitly addressed the defendants' life estate:

> 5. <u>Seller's Reservation of Life Estate.</u> As such shall be more fully stated in the Deed, the Sellers hereby reserve unto themselves a Life Estate in and to the Property, plus an additional term of twelve (12) months after the date of death of the last surviving Life Tenant – with the full obligations, rights and privileges of the Life Tenant . . . .

10. On July 1, 2010, Defendants executed a Deed of Bargain and Sale (the "Deed") conveying the Property to NSMNF. Consistent with the Life Estate Addendum, the Deed reserved certain rights for Defendants, including a life estate, as well as a twelve-month right of access for Defendants' successors. The Deed does not explicitly specify which

4

party would be responsible for paying real estate taxes on the Property and was otherwise silent as to the parties' respective rights and obligations.[4]

11. There were no promises exchanged in writing after the closing on July 1, 2010.

12. On July 2, 2010, the Deed from the Roses to NSMNF was recorded among the land records of Fairfax County, Virginia in Deed Book 21119 at page 0131.

13. On April 12, 2011, NSMNF conveyed its interest in the Property to Plaintiff, NAD, by deed recorded on July 11, 2011 among the land records of Fairfax County, Virginia in Deed Book 21748 at page 0060.

14. In approximately November 2011, Jeffrey Rose spoke with Thomas Howard Price III ("Price"), Plaintiff's authorized agent and managing partner who was also an authorized agent of NSMNF at the time of the conversation. During that conversation, Price confirmed that NSMNF was responsible for paying real estate taxes on the Property.

15. Defendants have not paid any real estate taxes on the Property since July 1, 2010.

16. Fairfax County has sent real estate tax bills to Plaintiff, or its predecessor, since the transfer of title on the Property; and until approximately February 2015, Plaintiff paid without protest or objection the real estate taxes on the Property as they have come due. On February 19, 2015, Plaintiff made its first written demand that Defendants pay real estate taxes on the Property.

17. As of October 20, 2016, Plaintiff had paid $94,626.12 in real estate taxes on the Property.

---

[4] The Deed stated in pertinent part as follows:
    Specifically reserved unto the Grantors, Aubrey Eugene ROSE and Darlene ROSE a LIFE ESTATE for and during their natural lives.
    SUBJECT ALSO to the rights of their heirs, personal representatives, executors, successors and assigns of the said life tenants, Aubrey Eugene ROSE and Darlene ROSE, to enjoy the same rights and privileges of the life tenants, including, but not limited to, occupying, entering upon and accessing the Property and removing their personal property from the Property for a period of no more than twelve (12) months from the date of the death of the last of the Grantors/life tenants herein.

## II. CONCLUSIONS OF LAW

1. This Court possesses subject matter jurisdiction because the amount in controversy exceeds the sum of $75,000, and the Plaintiff and Defendants are citizens of different states. 28 U.S.C. § 1332(a).

2. As this Court's jurisdiction is based upon diversity, the substantive law of Virginia governs, including Virginia's choice-of-law rules. *See, e.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941).

3. Because this action involves the sale of real property located in Virginia, the law of Virginia governs. *Mort v. Jones*, 51 S.E. 220, 221 (Va. 1905).

4. Barring an agreement to the contrary, a life tenant bears the burden of paying all real estate taxes that are assessed during the tenancy. *See City of Richmond v. McKenny*, 73 S.E.2d 414, 416 (Va. 1952) ("It is well settled that the burden of paying taxes is upon the life tenant rather than upon the remainderman and it is the life tenant's duty to pay the taxes.") (citations omitted); *see, e.g.*, *Pike v. Wassel*, 94 U.S. 711, 714 (1876) ("There can be no doubt but the defendants, as tenants for life, are bound in law to pay the taxes upon the property during the continuance of their estate."); *Commonwealth v. Wilson*, 16 S.E. 220 (Va. 1925) ("It is a well settled rule of law that the burden of paying taxes is upon the life tenant rather than the remainderman."); *cf. Livesay v. Boyd*, 180 S.E. 158, 159 (Va. 1935) (holding that, where property comes to a life tenant already subject to mortgage, the life tenant is entitled to income from the property, out of which he must pay taxes); *Patterson v. Old Dominion Trust Co.*, 140 S.E. 810, 815 (Va. 1927) ("It is true that, under the law of Virginia, the general rule is that taxes which accrue during the estate of a

tenant for life are liens on the estate of the life tenant only and cannot be enforced against the remainderman.").

5. Plaintiff contends that the general obligation of a life tenant to pay real estate taxes during the life tenancy, absent a specific agreement otherwise in the Deed itself, supersedes any other agreement between the parties under the merger doctrine. Under the merger doctrine, a previous contract is extinguished by an instrument of higher dignity—here, the Deed. *Empire Mgmt. & Dev. Co. v. Greenville Assocs.*, 496 S.E.2d 440, 442 (Va. 1998); *see also Philip Abi-Najm, et al. v. Concord Condominium, LLC*, 699 S.E.2d 483, 487 (Va. 2010) ("The deed is the final expression of the agreements between the parties as to every subject which it undertakes to deal with, and any conflicts between the terms [of the prior agreements and the deed] are resolved by the deed."). However, agreements which are only collateral to the passage of title, and not covered by the deed itself, are not merged into the deed. *Beck v. Smith*, 538 S.E.2d 312, 314 (Va. 2000).

6. Starting with *Woodson v. Smith*, 104 S.E. 794 (Va. 1920), Virginia courts have taken an increasingly liberal stance towards the merger doctrine, declining to find that earlier contracts are necessarily extinguished by subsequent deeds. As a result, the operative rule has evolved to become that "collateral agreements" are not merged and "[any] agreements are considered collateral to the sale if they are distinct agreements made in connection with the sale of the property, if they do not affect the title to the property, if they are not addressed in the deed, and if they do not conflict with the deed." *Beck*, 538 S.E.2d at 315; *see also Empire Mgmt.*, 496 S.E.2d at 442-43 (holding that a rent guarantee in a sales contract not reiterated in the deed survived merger); *Miller v.*

*Reynolds*, 223 S.E.2d 883 (Va. 1976) (finding contractual warranty that a building permit could be obtained did not merge into the deed).

7. Any agreement the parties reached concerning the proration of taxes is "collateral" and survives merger under the four element test of *Beck*. It is distinct from, but made in connection with, the conveyance; it does not affect Plaintiff's claim to title because Plaintiff is indisputably the owner of the property; it is not addressed in the Deed; and it does not conflict with any element of the Deed because the Deed does not specifically indicate which party is responsible for real estate tax payments.

8. Various aspects of the parties' transaction bear on who has the responsibility for the payment of real estate taxes. First, the Contract and the Life Estate Addendum state in paragraph eight that "real estate taxes . . . will be prorated as of the settlement date." That provision would serve no purpose, absent an agreement for the purchaser, viz., the Plaintiff, to be responsible for the real estate taxes after the settlement date and the transfer of title. However, paragraph eight of the Life Estate Addendum eliminates from paragraph eight of the Contract the provision that "the Purchaser [Plaintiff] agrees to register its identity with all taxing authorities, . . . as necessary to facilitate the intent of this paragraph" and "Purchaser's [Plaintiff's] obligations under this paragraph 8 shall survive Settlement and not merge with the deed." Moreover, paragraph five of the Life Estate Addendum states that "[a]s such shall be more fully stated in the Deed, the Sellers hereby reserve unto themselves a Life Estate in and to the Property . . . with the full obligations, rights and privileges of the Life Tenant." One of the obligations of a life tenant is to pay real estate taxes, absent an agreement otherwise. That obligation is not mentioned in the Deed, however, and therefore, it is not an obligation that was "more

fully stated in the Deed." The issue is thus whether, in light of these provisions, there is an ambiguity created by the parties' Contract, Life Estate Addendum, and Deed concerning the parties' responsibilities to pay real estate taxes.

9. "An instrument will be deemed unambiguous if its provisions are 'capable of only one reasonable construction.'" *Wetlands America Trust, Inc. v. White Cloud Nine Ventures, L.P.*, 782 S.E.2d 131, 136 (Va. 2016) (quoting *Clinch Valley Physicians, Inc. v. Garcia*, 414 S.E.2d 599, 601 (Va. 1992)). When the deed is plain and unambiguous, the court may not search for meaning beyond the four-corners of the instrument. *Virginia Elec. & Power Co. v. Northern Va. Reg'l Park Auth.*, 618 S.E.2d 323, 326 (Va. 2005). But when the language of a deed is ambiguous, a court may look to the language used in light of the circumstances surrounding the parties and the land at the time the deed was executed in order to discern the parties' intent. *Pyramid Dev., LLC v. D&J Assocs.*, 553 S.E.2d 725, 728 (Va. 2001). Because the Contract, Life Estate Addendum, and Deed, when read together, are capable of more than one reasonable construction, the parties' respective obligations for real estate taxes are not unambiguous.

10. The Court finds and concludes that the parties intended and agreed in the Life Estate Addendum that NSMNF, and therefore Plaintiff, would be responsible for paying the real estate taxes on the Property following the date of settlement, as evidenced by the parties' specific discussions and agreements both before and after the settlement in June, 2010, the language of the Life Estate Addendum, the absence of any specific provision to the contrary in the Deed, and Plaintiff's payment of those real estate taxes without protest or objection for over four years. Defendants are therefore not obligated to reimburse Plaintiff for the real estate taxes Plaintiff paid on the Property and are not responsible for any real estate taxes on the Property that may be assessed in the future.

11. For the above reasons, the Court finds in favor of Defendants Aubrey Eugene Rose and Darlene Rose and against Plaintiff, and its verdict and judgment will be entered accordingly.

The Court will issue an appropriate Order.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
December 23, 2016